IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TERESSA S. JOHNSON,

     Plaintiff,

  vs.

CAROLYN W. COLVIN,

     Defendant.

**4:14CV3146**

**MEMORANDUM AND ORDER**

  Plaintiff Teressa S. Johnson ("Johnson"), seeks review of the decision by the defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Supplemental Security Income disability benefits under Title XVI of the Act. See 42 U.S.C. § 1381.  After carefully reviewing the record, the Commissioner's decision is affirmed.

## I.  PROCEDURAL BACKGROUND

  Johnson protectively filed for SSI disability benefits on August 31, 2011, claiming an inability to work since July 30, 2002. (TR. 122-128, 171).  The application was denied on November 16, 2011.  (TR. 62).  Plaintiff requested reconsideration and that request was denied on February 14, 2012.  (TR. 67-74).  Plaintiff requested a hearing.  A hearing was held before an Administrative Law Judge ("ALJ") on January 29, 2013. (TR. 29).  The plaintiff, who was represented by counsel, and a vocational rehabilitation expert ("VE") testified at the hearing.

  On March 6, 2013, the ALJ issued his written decision stating Johnson was not disabled.  (TR. 11-24).  Plaintiff timely filed a Request for Review of the ALJ's decision. (TR. 9).  The Appeals Council denied the request on June 18, 2014. (T. 1).  Plaintiff timely filed her appeal in this court on July 21, 2014.  (Filing No. 1).

## II.     THE ALJ's DECISION

The ALJ evaluated Johnson's claim through the five-step sequential evaluation process to determine whether Johnson was disabled.   20 C.F.R. §416.920(a)(4).   As reflected in his decision, the ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since August 31, 2011, the application date (20 CFR 416.971 et seq.).

2.  The claimant has the following severe impairments: fibromyalgia, obesity, anxiety, bipolar disorder, and borderline personality disorder (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 46.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b).   The claimant can occasionally climb ramps and stairs, but can never climb ropes, ladders, or scaffolds.   She is limited to occasionally kneeling, crouching, and crawling.   The claimant should avoid concentrated exposure to unprotected heights, excessive vibration, and hazardous machinery.   In addition, the claimant is limited to unskilled work only that requires no more than occasional contact with the public and coworkers.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.      The claimant was born on January 7, 1964 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not material to the determination of disability because, using the Medical-Vocational Rules as a framework, the record supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(TR. 16-23).

## III.   ISSUES RAISED FOR JUDICIAL REVIEW

Johnson's complaint requests judicial review of the ALJ's decision, asserting the following arguments support her claim for reversal:

1)      The ALJ erred by finding the Plaintiff did not satisfy Listing 14.09D;

2)      The evidence does not support the ALJ's conclusion that Plaintiff can perform a significant number of jobs despite her impairments;

3)      The ALJ failed to properly consider Dr. McDonald's opinion; and

3

4)      The ALJ failed to properly evaluate Plaintiff's credibility.

## IV.   THE RECORD AND PROCEEDINGS BEFORE THE ALJ

Johnson was 47-years-old when she submitted her application for benefits.  (TR. 34).  She has a Bachelor of Science in Education, but is not employed.  (TR. 34).

The plaintiff lives alone in her home provided by her parents.  (TR. 34).  Her parents vacation year-round with their recreational vehicle, and she sees them only twice a year.  (TR. 247, 249, 339).  She had lived with a roommate (and the roommate's family), but the roommate moved out about two years before Johnson filed her disability claim.  (TR. 247).

Johnson has bipolar depression, a sleep disorder, double vision, anxiety, and fibromyalgia.  (TR. 182, 332).  She claims she is unable to work due to the pain of fibromyalgia, her severe anxiety, (TR. 34), and double vision arising from a car accident that occurred in 2001. (TR. 40, 248).  At the time of the hearing, Johnson weighed 270 pounds.  (TR. 37).

Johnson did not see a medical doctor during the eight years prior to filing for disability benefits, (TR. 248), and she received no counseling between 2005 and September of 2010.  (TR. 248). As prescribed by Dr. Angie Rakes, Johnson participated in a four-week program in 2002 to learn how to manage her pain.  (TR. 345).  She is unwilling to take narcotic medications for pain management.  (TR. 35).

The plaintiff has filed prior claims for social security benefits, at least two of which have been appealed for review by this court.[1]  Both claims alleged disabling pain due to fibromyalgia.  This court's adverse ruling on the 2009 case was entered on July 22, 2010.

The plaintiff was next seen by Alan Baumgardner, PA-C on September 3, 2010. (TR. 238-39).  During that appointment she stated that based on her research she was unwilling to take Lyrica, as prescribed by Dr. Baumgardner, due to possible side effects, and she wanted to return to taking Cymbalta.  She had never filled the prescription she previously received for Nuvigil and did not sign up for patient assist to obtain that prescription.  (TR. 238-39).  She did not seek treatment from Third City Community Clinic from 2009 until at least January 2012.[2]  (TR. 297).  Dr. Baumgardner's office offered Johnson help with applying for the patient assist program to receive the Nuvigil and Cymbalta prescriptions.  (TR. 239).[3]

Johnson continued to see Dr. Baumgardner every two or three months for medication management.  (TR. 36).  During every appointment with Dr. Baumgardner, she was pleasant and cooperative, her affect was euthymic, her thought processes were logical and goal oriented, she was alert and oriented, and appeared to be in no acute distress or only minor distress.  (TR. 234-238, 287-290, 320-329).  Mike Kelley, the counselor who saw Johnson two to three times a month until December of 2012, had similar findings.  (TR. 36, 44).

---

[1] See 8:06-cv-00586-RGK Johnson v. Social Security Administration, and 4:09-cv-03085-RGK Johnson v. Astrue.

[2] Third City Community Clinic provides medical care to low income patients.

[3] Johnson's prescriptions cost $5 each. (TR. 232).

5

At Johnson's appointment with Dr. Baumgardner on December 22, 2010, Johnson stated she started having sleep problems and "missing time" on December 13, 2010. (TR. 236).  Dr. Baumgardner prescribed Focalin on March 4, 2011 for the "missed time" episodes.  (TR. 233).  During the following six months, Johnson continued experiencing memory lapses, with a six-hour memory gap occurring before and during a lecture she was delivering at her church. The Focalin was discontinued on October 19, 2011, (TR. 293), and by the November 21, 2011 appointment with Dr. Baumgardner, Johnson was reporting no "missed time" experiences.  (TR. 292).

On October 28, 2011, Johnson was referred to David L. Duke, Ph.D. by the Disability Determination Services of the State of Nebraska for a psychological interview to aid in determining Johnson's disability status.   During the examination, Johnson reported increased depression and anxiety when under stress, and stated she occasionally handled her funds poorly due to impulse buying, in all other respects, her mental status examination was normal.  (TR. 250-51).  Contrary to her statements to Dr. Baumgardner, Johnson stated she had not experienced episodes of "missing time" since she was prescribed Focalin.  (TR. 250).

During her evaluation by Dr. Duke, Johnson stated she volunteers about once a week at a ceramic shop, cleaning up projects in exchange for materials for her own activities and crafts.  She also described making quilts and baptismal banners for her church, explaining she used to do a lot of arts and crafts and needlework but can no longer do such detailed work without magnifying readers.  (TR. 247).

Johnson saw Jan McDonald, M.D. for a disability examination on November 8, 2011.  (TR. 257).  McDonald performed range of motion testing, all of which was bilaterally equal and normal.  (TR. 258).  Based on Johnson's description of her

6

symptoms, and her subjective complaints of pain during testing, Dr. McDonald concluded:

> [Johnson's] general assessment is a history of intermittent problems with depression with increased issues of loss of time. She has sleep behavior abnormalities, chronic pain syndrome consistent with fibromyalgia. At this time, I feel that she is disabled secondary to her chronic pain syndrome, morbid obesity.

(TR. 257).

Based on the physical residual functional capacity examination performed on November 16, 2011, Johnson was able to occasionally lift 20 pounds, and frequently lift 10 pounds, but had no other physical limitations. (TR. 277-284, 319).

A psychiatric review was performed by Patricia Newman, Ph.D. on November 14, 2011. Dr. Newman found Johnson has mild difficulties in maintaining social functioning, (TR. 273), but concluded her condition would not severely limit her work abilities. (TR. 276). Noting Johnson volunteers at a ceramic shop and at church, leads Bible studies, and has a college degree, Newman found Johnson's complaints were only partially credible. (TR. 276).

On February 13, 2012, Linda Schmechel, Ph.D. performed an additional psychiatric review. Dr. Schmechel found Johnson has moderate difficulties in maintaining social functioning, concentration, persistence, or pace, and her anxiety disorder would impose moderate social and attention limitations. But Johnson has no marked limitations of activities due to psychological impairments. (TR. 304-316).

The mental residual functional capacity evaluation performed the same day found Johnson has moderately limited ability to:

- understand and remember detailed instructions;

7

- carry out detailed instructions;

- maintain attention and concentration for extended periods;

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- complete a normal workday and workweek without interruptions from psychologically based symptoms;

- perform at a consistent pace without an unreasonable number and length of rest periods;

- interact appropriately with the general public; and

- accept instructions and respond appropriately to criticism from supervisors.

(TR. 299-301).  The report noted Johnson reported fewer episodes of losing time after her medications were adjusted.

When the hearing before the ALJ was held on January 29, 2013, Johnson was taking four mental health medications; Cymbalta, Lamictal, Klonopin, and Invega.  (TR. 178).  Johnson testified that she is able to attend church, but misses 40 percent of Sunday services due to pain and depression.  (TR. 39).  She can cook for herself using the microwave or a crock pot (but not with a stove because she cannot lift pans), bathes and dresses herself (with pain, dizziness, and difficulty), and shops and runs errands (provided a friend drives her).  (TR. 36-37, 39-40, 191, 206).

Johnson claims she sleeps only 3 hours a night.  (TR. 188).  She testified that she is unable to stand for more than 5 minutes without having balance difficulties and blackouts due to double vision, (TR. 40), and is able to walk two blocks straight, but her legs go numb if she walks for more than 20 minutes due to edema in her legs.  (TR. 37-38).  She has fallen due to balance problems, but has never uses a cane.  (TR. 45).  She claims she can sit for no more than 30 minutes and can lift no more than 10 to 15 pounds.  (TR. 38).  Johnson testified that three to four days per week, pain and vision issues make

8

it difficult to concentrate or get out of bed. (TR. 40-42). On those days, she feels scared, alone, worthless, and depressed. (TR. 41-42). She claims she is afraid of being in public, (TR. 188), and testified that she "loses time" about twice a week, meaning she cannot, upon reflection, recall what she did during the day. (TR. 45). Occasionally, she has anger and anxiety attacks during which she trashes her house and throws things. (TR. 46, 248).

Johnson worked as a telephone solicitor, but can no longer perform that job due to vision problems and anxiety when speaking to others. (TR. 43). She had also worked as an insurance clerk and as an account manager for an insurance company. (TR. 48).

The ALJ posed the following hypothetical question to a vocational rehabilitation expert (VE)[4] who had reviewed the plaintiff's records.

> I want you to assume an individual Ms. Johnson's age, education, same past work experience. This individual is limited to performing light exertional level work; can occasionally climb stairs and ramps; never climb ropes, ladders, and scaffolds; occasionally kneel, crouch, and crawl; should avoid concentrated exposure to unprotected heights, excessive vibration, and hazardous machinery; and we're going to limit this individual to unskilled work only, which requires no more than occasional contact with the public and coworkers.. . . . Could that person perform any of Ms. Johnson's past work?

(TR. 48). The VE responded, "No." The ALJ then asked if there were "any other jobs in the national or regional economy that an individual with those limitations could perform," (TR. 49), the VE responded:

> Yes. Examples are light and unskilled, SVP: 2. The first one, mail clerk, DOT 209.687-026; state of Nebraska, 1,310; nation, 138,990. Another example, electrical assembler, DOT 729.687-010; state of Nebraska, 1,300;

---

[4] See the VE's curriculum vitae. (TR. 111-115).

nation, 216,470. Lastly, merchandise marker, DOT 209.587-034; state of Nebraska, 3,139; nation, 460,949.

In a second hypothetical question, the ALJ asked the VE to assume an individual of Johnson's education and past work with the following abilities and disabilities:

> This individual is limited to performing sedentary exertional level work; can occasionally climb stairs and ramps; never climb ropes, ladders, and scaffolds; occasionally stoop, knee, crouch, and crawl; should avoid concentrated exposure to unprotected heights, excessive vibration, hazardous machinery; unskilled work only; no more than occasional contact with the public, coworkers; and the individual should not be required to perform what would be considered to be high production rate jobs, although low and medium rate production rate jobs would be acceptable. Would there be any jobs in the national or regional economy that an individual with those limitations could perform?

(TR. 49-50).  The VE responded:

> Yes. Examples are sedentary and unskilled, SVP: 2. The first one stuffer, S  T  U  F  F  E  R, DOT 731.685-014; state of Nebraska, 3,340; nation, 368,320. Another example, stem mounter, S  T  E  M  mounter, DOT 725.684-014; state of Nebraska, 1,300; nation, 216,470. Lastly, document preparer, DOT 249.587-018; state of Nebraska, 840; nation, 22,897.

(TR. 50).   As a follow up, the ALJ asked the VE to assume all the facts in the second hypothetical, plus the following additional facts:

> any job must allow for occasional unscheduled disruptions of both the workday and workweek - secondary to a necessity to lie down for extended periods of time during the day, potential, potentially frequent -- occasional to frequent periods of decompensation during the workday, an inability to focus or concentrate for a full eight hours out of an eight-hour workday secondary to pain distraction, and unreliability as far as showing up for work, secondary to symptoms or treatment, those types of things. Would there be any jobs in the national or regional economy that an individual with all of those limitations could perform?

(TR. 50).  The VE responded, "No."  (TR. 51).

## VI.  LEGAL ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole.  Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001) .

> If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. Wildman v. Astrue, 596 F. 3d 959 (8th Cir. 2010).   The court should not overturn an ALJ's decision so long as it is in the "zone of choice" even if the court disagrees with the ALJ's conclusion.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).

Johnson claims the court must reverse the Commissioner's decision because the ALJ failed to properly evaluate Plaintiff's credibility and failed to properly consider Dr. McDonald's opinion, it erred by finding Johnson's impairment or combination of impairments do not meet or medically equal the severity of Listing 14.09D; and it erroneously concluded Johnson remains able to perform a significant number of jobs

11

despite her impairments.  For the reasons discussed below, each of these arguments for reversal will be denied.

    1)      <u>Evaluating Plaintiff's Credibility.</u>

Based on the records and plaintiff's testimony, Johnson's medical history includes a diagnosis of fibromyalgia, bipolar depression, a personality disorder with histrionic features, a sleep disorder (narcolepsy), carpal tunnel syndrome, and a seizure disorder. The plaintiff argues she is disabled and entitled to social security benefits because, considered collectively, her symptoms arising from these medical and mental health disorders severely restrict her ability to perform substantial gainful work activity.  (Filing No. 14, at CM/ECF p. 8).

Plaintiff's disability claim requires assessing the presence and level of Plaintiff's pain, difficulty sleeping, depression, irritability, social anxiety, and memory lapses—all of which are subjective symptoms and complaints.[5]  Any determination of impairment arising from these subjective complaints rests, as a threshold matter, on evaluating the plaintiff's credibility.   And before an ALJ can determine an applicant's level of impairment, the ALJ must determine the applicant's credibility because subjective complaints play a role in assessing a plaintiff's residual functional capacity. Ellis v. Barnhart, 392 F.3d 988, 995-96 (8th Cir. 2005). See also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility.").

The ALJ specifically cited the Social Security regulations he followed in considering the plaintiff's credibility.  As stated by the ALJ in this case, "whenever

---

[5] There is no information of record indicating the plaintiff has any impairments due to carpal tunnel syndrome or an alleged seizure disorder.

statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record." (TR. 19).   An ALJ "is not required to discuss every piece of evidence submitted," and his "failure to cite specific evidence [in the decision] does not indicate that such evidence was not considered." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

The ALJ concluded Johnson's subjective complaints "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." (TR. 19). As explained in the ALJ's opinion, and fully supported by the record:

- The plaintiff claims she has balance problems, including falls resulting in bruising, but she does not use a cane, (TR. 19);

- The plaintiff complains of debilitating pain, but she takes no prescription medication designed to alleviate pain, sought no medical treatment during the eight years prior to filing her disability claim, and with only minor exceptions, her orthopedic examination by Dr. McDonald revealed normal range of motion and strength in all muscle groups, (TR. 20);

- The plaintiff describes lapses of memory, but denied any such incidents after taking Focalin, and although she also complained of sleep deprivation, during all appointments with Dr. Baumgardner and her evaluation by Dr. Duke, her memory was intact, her level of attention and concentration was normal, her thought processes were clear and relevant, and she reported having adequate energy, (TR. 20);

- Even after an eight-year treatment hiatus, and despite local access to low cost medical care for those with limited resources, Plaintiff's extent and frequency of

13

medical and mental health treatment consisted of medication checks every two to three months with Dr. Baumgardner, and counseling every two weeks (with attendance at counseling suspended for over a month before her hearing), (TR. 20); and

- The plaintiff alleges she is afraid of people, loses time, and has disabling pain, but she is able to care for her home without assistance, bathes and dresses herself, does household chores, volunteers at church, makes crafts and quilts, and volunteers at a ceramic shop, (TR. 21).

While the plaintiff claims the ALJ erred by failing to properly consider the statements from Plaintiff's parents and prior roommate, offered to corroborate and bolster Plaintiff's subjective complaints, the ALJ's decision mentions these third-party statements and explains why they were not considered reliable sources. Specifically, and as the ALJ's decision explains, the information provided by Plaintiff's parents and past roommate merely repeated Plaintiff's own statements. The parents' statements were not based on first-hand knowledge: The Plaintiff sees her parents only twice a year. And as to the former roommate, the statement was stale and irrelevant: The plaintiff had not lived with a roommate for over two years before she filed for social security benefits. (TR. 22).

Plaintiff's brief states "the claimant testified that she did not have any medical insurance to pay for medications and further doctor appointments." (Filing No. 14, at CM/ECF p. 14).[6] She argues that "[t]he lack of medical treatment where an individual is destitute and has no access to medical care cannot be used to discredit her credibility." (Filing No. 14, at CM/ECF p. 14).

---

[6] Plaintiff's brief does not cite to the record page of this testimony. See Filing No. 14, at CM/ECF p. 14. And after re-reading the entire hearing transcript, the court is convinced the testimony described in the brief does not exist.

Plaintiff's brief is inconsistent with the record. The plaintiff testified that she received financial assistance to pay for her prescriptions, (TR. 38), and she never mentioned lack of funds or insurance as explaining her lack of medical treatment. Perhaps more importantly, there is no evidence that she attempted to obtain treatment, but was denied due to insufficient funds or insurance. See, e.g., Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir.1999) (ALJ appropriately discounted claimant's argument that he could not afford medical care absent evidence he sought and was denied low-cost or free care); Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir.1989) (although lack of funds may sometimes justify failing to seek medical care, there was no evidence plaintiff had told his physicians he could not afford the prescription at issue and was denied the medication).

The ALJ's credibility findings are explained in his opinion and are supported by substantial evidence on the record as a whole. Andrews, 791 F.3d at 929 (8th Cir. 2015). Plaintiff's argument for reversal based on the ALJ's alleged failure to adequately evaluate the plaintiff's credibility will be denied. See, e.g., Milam v. Colvin, No. 14-3240, 2015 WL 4491742, at *6 (8th Cir. July 24, 2015)(affirming the ALJ's decision discrediting the plaintiff's subjective complaints where the plaintiff received only conservative treatment and medication, and received no treatment for over 4 years); Andrews v. Colvin, 791 F.3d 923, 929 (8th Cir. 2015)(affirming the denial of benefits where the ALJ cited reasons for discounting the plaintiff's credibility, including his daily activities, and non-compliance with medication regimens); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (holding the failure to request pain medication is an appropriate consideration when assessing the credibility of a claimant's complaints of pain.); Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)("[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility").

2)    The ALJ's Failure to Consider Dr. Jan McDonald's Opinion.

The plaintiff argues the ALJ erred by not affording sufficient weight to the medical opinions of Jan McDonald, M.D. and Angie Rakes, M.D.

Dr. Rakes last treated the plaintiff in 2002, and her medical records were included in Plaintiff's past unsuccessful social security claims.  This 2002 record cannot be relied upon to assess Plaintiff's level of impairment a decade later.  More importantly, it does not support Plaintiff's current claim.

Purportedly quoting from Rakes' medical record, Plaintiff claims Dr. Rakes stated "[Johnson's] muscle strength is diminished as per her range of motion.  At this time I feel she is disabled." (TR.344).   That statement does not exist in Dr. Rakes' record.  Instead, Dr. Rakes reported Johnson's "[s]trength is grossly normal at the upper and lower extremities."  And Rakes concluded:

> The patient is to go into the chronic pain program which is a four-week program with a physical therapist and a clinical psychologist who help people deal with their lifelong pain. I think this patient would make an excellent candidate as she is a young lady and has a long life ahead of her. She has just been off work for about one month, and I think we can get her back to work.

(TR. 345).

On November 8, 2011, McDonald evaluated Johnson, and based at least in part on Johnson's subjective complaints of pain during testing, concluded:

> [Johnson's] general assessment is a history of intermittent problems with depression with increased issues of loss of time.  She has sleep behavior abnormalities, chronic pain syndrome consistent with fibromyalgia.  At this time, I feel that she is disabled secondary to her chronic pain syndrome, morbid obesity.

(TR. 257).

16

The "increased issues of loss of time" referenced in Dr. McDonald's report is sandwiched between and directly contradicted by Johnson's October 28, 2011 report to Dr. Duke stating she had not experienced memory lapses since she was prescribed Focalin, (TR. 250-51), and her November 21, 2011 report to Dr. Baumgardner of no "missed time" experiences. (TR. 292).   And Dr. McDonald's conclusion that Johnson is "disabled" or "unable to work" is not a medical opinion worthy of the ALJ's consideration. The issue of whether a claimant is unable to work and disabled, as that term is defined under social security law, is made by the Commissioner, not a doctor. 20 C.F.R. § 416.927 (d)(1) & (d)(3).  While a "claimant's residual functional capacity is a medical question," (Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)), stating that a claimant cannot work is not a medical opinion.  Rather, it is an opinion on the application of the statute, a task that is assigned solely to the discretion of the Commissioner.  See Brosnahan v. Barnhart, 336 F.3d 671, 676 (8th Cir. 2003) (ALJ properly discounted psychologist's opinion that claimant could not work); Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (psychiatrist's opinion that claimant could not be gainfully employed was not a medical opinion); Flynn v. Chater, 107 F.3d 617, 622 (8th Cir. 1997)(physician's opinion that claimant "may not be able to work in a competitive employment situation" not given weight).

As explained in the ALJ's written decision:

> Dr. McDonald opined that the claimant is disabled secondary to chronic pain syndrome and morbid obesity.  I give no weight to this opinion.  This opinion is inconsistent with the claimant's daily activities that include volunteer activities and housekeeping, which indicates she is capable of engaging in physical activity. The claimant also lives alone and manages to take care of her home without assistance. This opinion is also inconsistent with the fact that she has not received any treatment since 2003, which suggests she is not significantly limited by her fibromyalgia diagnosis. Further, an opinion that the claimant is "disabled" is an opinion on an

ultimate issue in this case; such opinions are reserved to the Agency. Accordingly, I give Dr. McDonald's opinion no weight.

(TR. 22).

The ALJ concluded Dr. McDonald's opinion was not entitled to any consideration. That decision is supported by the record as a whole, consistent with the governing law, and fully explained in the written opinion. The Commissioner's denial of benefits is not subject to reversal for failure to consider Dr. McDonald's opinions and conclusions.

3.   Failure to Meet or Medically Equal the Severity of Listing 14.09D.

Johnson argues "[t]he medical evidence is abundantly clear that the patient suffers from fibromyalgia which causes the Plaintiff extreme pain and makes even the slightest movement difficult." She argues the impairments from her other medical and mental health disorders (obesity, anxiety, bipolar disorder, borderline personality disorder, seizure disorder, somatoform disorder, depression, carpel tunnel syndrome, and sleep disorder), in combination with her fibromyalgia, meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The burden of proof is on the plaintiff to establish that her impairment meets or equals a listing. To meet a listing, an impairment must meet all of the listing's specified criteria. And medical equivalence must be based on medical findings equal in severity to all the criteria for the one most similar listed impairment. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

"[Fibromyalgia] is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling, SSR 12-2P; Titles II and XVI: Evaluation

of Fibromyalgia, (July 25, 2012).  See also Brosnahan v. Barnhart, 336 F.3d 671, 678 (8th Cir. 2003).  Fibromyalgia cannot meet a listing in Appendix 1 because it is not a listed impairment.  So the question is whether Plaintiff's fibromyalgia "medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."  Id.

Listing 14.09D identifies the criteria for finding a claimant's impairment meets or is equivalent to inflammatory arthritis.  The claimant must have:

    1)     repeated manifestations of disease process, and

    2)     at least two of constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss), and

    3)     a marked limitation on either

        a.     performing the activities of daily living, or

        b.     maintaining social functioning, or

        c.     completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.09(D).

As applied to the Johnson's record, considering every ailment, disease process, or impairment supported or alleged in the record, there is no credible evidence that the plaintiff experienced severe fatigue, fever, weight loss, or malaise.  And there is no evidence that her activities of daily living, social functioning, concentration, persistence or pace were markedly limited by fibromyalgia, either alone or in combination with the impairments caused by her other real or perceived medical or mental health problems.  Based on her mental residual functional capacity evaluation, at most, Johnson has only

19

moderate limitations in maintaining social functioning or completing tasks in a timely manner.  (TR. 299-301).

The record does not support a finding that Plaintiff suffers from an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Johnson's argument to the contrary is denied.

4)      Ability to perform work in the national market.

The ALJ found "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (TR. 23).  Johnson claims the evidence does not support this conclusion.

Johnson argues her "limitations significantly erode the jobs available to her and her inability to maintain a full-time work schedule, day in and day out, warrants a finding of disability."  (Filing No. 14, at CM/ECF p. 9).  She claims:

> The VE found that Plaintiff could perform only three (of the 200) unskilled light occupations, and none of the machine trades and bench work occupations that make up 85 percent of all unskilled, light jobs.  Thus, it is clear that Plaintiff was unable to perform a full or wide range of light, unskilled, work activity and the ALJ's findings as quoted above are not supported by substantial evidence.

(Filing No. 14, at CM/ECF p. 11).

Contrary to Plaintiff's argument, when assessing a claimant's ability to perform jobs in the national economy, ALJ must take into consideration the plaintiff's age, experience, and limitations and decide if there are any jobs the plaintiff remains able to

perform which exist in sufficient numbers in the labor market such that Plaintiff could be expected to compete for the position and be hired.   The ALJ must determine whether the claimant "is able to perform other work in the national economy in view of [her] age, education, and work experience.   The claimant is entitled to disability benefits only if [she] is not able to perform other work."   Bowen v. Yuckert, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).   The ALJ (and the court) is not deciding what percentage of occupations or job titles are consistent with, or beyond, the Plaintiff's capabilities.

The hypothetical questions posed to the vocational expert (VE) were wholly consistent with his credibility determinations and the findings within the physical and mental RFCs.   Johnson claims that "Based upon the RFC given to the VE by the ALJ, the VE believed that Plaintiff could perform only three occupations at the unskilled, light level," and of those three occupations, the mail clerk and electrical assembler jobs—as described in the Dictionary of Occupational Titles—are inconsistent with the ALJ's hypothetical question and beyond the plaintiff's capabilities.   (Filing No. 14, at CM/ECF p. 10).   Johnson argues the VE did not provide reliable and admissible testimony regarding the Plaintiff's ability to perform work that exists in significant numbers in the national economy.   (Filing No. 14, at CM/ECF p. 10).

As explained below, Plaintiff's argument is misleading and specious.

- The VE never testified that Plaintiff is limited to "only three occupations at the unskilled, light level."   Rather, the VE cited three "examples" of light and unskilled jobs the plaintiff remains able to perform, and in response to a second hypothetical question, provided three examples of sedentary and unskilled jobs the plaintiff can perform.

- As to the mail clerk job, Plaintiff claims it is beyond her mental reasoning ability because she has only a high school education.[7]  This statement is simply false.  As the record establishes, the plaintiff is a college graduate.

- The plaintiff claims she cannot perform the electrical assembler and mail clerk jobs because, based on the hypothetical question posed to the VE, she must avoid hazardous machinery.   There is nothing in the Department of Labor's description of a mail clerk, (see http://www.occupationalinfo.org/20/209687026.html) or an electrical assembler (see http://www.occupationalinfo.org/72/729687010.html) indicating either job requires using hazardous machinery.

- The plaintiff has raised no argument that the merchandise marker position is inconsistent with the ALJ's hypothetical question.  And with 3,139 such jobs in Nebraska, and 460,949 such jobs in the nation, the plaintiff's ability to perform this job alone is sufficient to prove she is not disabled.

- The plaintiff fails to even mention the three examples of sedentary and unskilled jobs described by the VE: a stuffer, with 3,340 jobs in Nebraska and 368,320 in the nation; a stem mounter, with 1,300 jobs in Nebraska and 216,470 in the nation; and a document preparer, with 840 jobs in Nebraska, and 22,897 in the nation.

After careful review of the administrative record, including the VE's testimony, the court finds that substantial evidence supports the ALJ's finding that a significant

---

[7] Plaintiff's counsel cites page 23 of the transcript.  (Filing No. 14, at CM/ECF p. 3).  As stated on that page, the ALJ citing the language of 20 CFR 416.964 and found:

> **7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

Plaintiff's college education is referenced throughout the record.  See, e.g., TR. 34, 176, 212, 248, 275 & 340.

number of jobs exist in the national and state economies that a person with Johnson's RFC could perform. See, e.g., Welsh v. Colvin, 765 F.3d 926, 930 (8th Cir. 2014) (holding testimony that 330 surveillance systems monitor and call out operator jobs existed in Iowa, and that claimant could perform "most" of those jobs was sufficient to prove the claimant was not disabled); Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997) (340 jobs in state that would actually accommodate claimant's restrictions considered significant); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir.1988) (500 jobs in region considered significant).

Upon review of the record as a whole, the court finds substantial evidence supporting the ALJ's decision.

IT IS ORDERED:

1)    The decision of the Commissioner of the Social Security Administration is affirmed.

2)    Judgment in accordance with this memorandum and order will be entered by separate document.

August 20, 2015.

BY THE COURT:

s/ Cheryl R. Zwart
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.